UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE:

MARSHA D. RUFFINS,                                          CASE NO. 10-15143-NPO

DEBTOR.                                                     CHAPTER 7

MARSHA D. RUFFINS                                           PLAINTIFF

V.                                                          ADV. PROC. NO. 10-01225-NPO

TOWER LOAN OF MISSISSIPPI, INC. AND                         DEFENDANTS
JAVORA STAPLES

MEMORANDUM OPINION AND ORDER DENYING TOWER LOAN
OF MISSISSIPPI, INC.'S MOTION FOR SUMMARY JUDGMENT AND
JAVORA STAPLES' MOTION FOR SUMMARY JUDGMENT

There came on for consideration Tower Loan of Mississippi, Inc.'s Motion for Summary Judgment (the "Tower Loan Motion") (Adv. Dkt. 35)[1] and Memorandum Brief in Support of Tower Loan of Mississippi, Inc.'s Motion for Summary Judgment (the "Tower Loan Brief") (Adv. Dkt. 36) filed by Tower Loan of Mississippi, Inc., d/b/a Tower Loan of Greenville ("Tower Loan"); Javora Staples' Motion for Summary Judgment (the "Staples Joinder") (Adv. Dkt. 37) filed by Javora Staples ("Staples"); and Plaintiff's Response to Tower Loan of Mississippi, Inc.'s Motion for Summary Judgment (the "Debtor Response") (Adv. Dkt. 43) and Plaintiff's Memorandum in Opposition to the Defendants' Motion for Summary Judgment (the "Debtor Brief") (Adv. Dkt. 44) filed by the Debtor, Marsha D. Ruffins ("Debtor"), in the above-styled adversary proceeding (the

---

[1] Citations to the record are as follows: (1) citations to docket entries in this adversary proceeding, Adv. Proc. No. 10-01225-NPO, are cited as "(Adv. Dkt. ____)" and (2) citations to docket entries in the main bankruptcy case, Case No. 10-15143-NPO, are cited as "(Dkt. ____)."

"Adversary"). Also under consideration is Tower Loan of Mississippi, Inc.'s Rebuttal to Plaintiff's Response to Motion for Summary Judgment (Adv. Dkt. 45) filed by Tower Loan. John S. Simpson represents Tower Loan, Nick Crawford represents Staples, and Glenn H. Williams represents the Debtor. Having reviewed the above-referenced pleadings and all the exhibits attached thereto, the Court finds for the reasons set forth below that the Tower Loan Motion and the Staples Joinder are not well taken and should be denied.[2]

## Jurisdiction

This Court has jurisdiction over the subject matter of and the parties to this proceeding. This matter is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(O). Notice of the Tower Loan Motion and the Staples Joinder was proper under the circumstances.

## Facts

When deciding whether summary judgment is proper, the Court must view the evidence submitted by the parties in the light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984). Applying this standard, the Court finds the following undisputed material facts:

1. On July 31, 2007, the Debtor executed a promissory note (the "Note") in the original principal amount of $63,000, secured by two deeds of trust on separate residential properties in Leland, Mississippi, located at 705 E. Third Street (the "Debtor's Residence") and at 63 Feltus Drive (the "Debtor's Family Residence") (together, the "Subject Properties"). The Note was payable to

---

[2] This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052.

Tower Loan in monthly installments of $1,050 for a term of 60 months, beginning on September 9, 2007.

2. At two separate foreclosure sales conducted by Tower Loan, the Debtor's Family Residence sold for $19,922.57 on January 14, 2008, and the Debtor's Residence sold for $26,184.64 on February 20, 2008, to Tower Loan who was the highest and best bidder. According to a memorandum written by an employee of Tower Loan during the loan application process, the fair market value of the Debtor's Family Residence was $31,000, and the fair market value of the Debtor's Residence was $64,000. (Debtor's Ex. B at Ex. 1).

3. The chart below documents the payments made by the Debtor prior to and after the foreclosure sales of the Subject Properties:

|  | Pre-Foreclosure Payments | Post-Foreclosure Payments |
| --- | --- | --- |
| Subject Properties | $5,250 | $29,343.12 |

4. After the foreclosure sales, the Debtor and her family continued to occupy the Subject Properties.

5. The Debtor alleges that after the foreclosure sales, she spoke by telephone with Taris Mumford ("Mumford"), the branch manager of Tower Loan in Leland, Mississippi, and that he agreed to re-title or reconvey the Subject Properties to her upon Tower Loan's receipt of three monthly payments. The Debtor paid $2,700 to Tower Loan on December 12, 2008. (Debtor Ex. B at Ex. 2).[3]

---

[3] Exhibits attached to the Tower Loan Motion are cited as "(Tower Loan Ex. ____)", and exhibits attached by the Debtor to the Response are cited as "(Debtor Ex. ____)." The Debtor attached six exhibits to Exhibit B. Those exhibits are cited as "(Debtor Ex. B at Ex. ____)."

6. A Lease-Purchase Agreement (the "Lease") between Tower Loan and the Debtor was dated July 1, 2010,[4] but was signed by Tower Loan and not signed by the Debtor. (Debtor Ex. A).

7. The Lease required the Debtor to pay Tower Loan $1,050 per month beginning on June 6, 2010, the same payment as in the Note. The term of the Lease was for 27 months. The Lease contained an "Option to Purchase" provision that granted the Debtor the option to purchase the Subject Properties at a price of $28,350, less the aggregate amount of any lease payments paid.

8. According to the Debtor, the Lease does not precisely set forth all of the terms of her oral agreement with Mumford at Tower Loan. (Debtor Brief at 3).

9. Despite the Lease and without the Debtor's knowledge, Tower Loan sold the properties to Staples in September, 2010, for $28,350, the combined purchase price in the Lease, prior to an adjustment for lease payments paid.

10. The Debtor received a notice to vacate the Subject Properties and was served with a summons for eviction issued by the Justice Court of Washington County, Mississippi.

11. On October 22, 2010, the Debtor filed a voluntary petition for relief under chapter 7 (Dkt. 1).

12. The Debtor initiated this Adversary by filing a Complaint (Adv. Dkt. 1) seeking monetary damages against Tower Loan for breach of a promise to reconvey the Subject Properties and the specific performance of that agreement. The Debtor also seeks injunctive relief prohibiting Tower Loan and Staples from evicting her from the Subject Properties. The Debtor raises four causes of action in her Complaint: (1) breach of contract, (2) wilful breach of contract/ bad faith, (3)

---

[4] Although the date on the Lease is July 1, 2010, Tower Loan contends the date was actually July 1, 2009.

fraud, and (4) specific performance (the "Causes of Action").

## Discussion

The Court must determine if the facts presented establish the existence of a dispute as to whether Tower Loan made an agreement with the Debtor regarding her continued occupancy and repurchase of the Subject Properties and if so, whether it was memorialized in writing. The resulting legal question raised in the Tower Loan Motion and the Staples Joinder is whether Mississippi's statute of frauds, Miss. Code Ann. § 15-3-1(c), bars the Causes of Action *in toto*.

### A. Standard of Review

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates the summary judgment standard established in Rule 56 of the Federal Rule of Civil Procedure.[4] Summary judgment is appropriate under Rule 56(a) when viewing the evidence in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, if any, show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Celotex Corp.v. Catrett, 477 U.S. 317, 322-23 (1986).

Defense of a proper summary judgment motion requires more from the non-moving party than mere allegations or denials of her pleadings. Rule 56(e) provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .

---

[4] Pursuant to the Rules Enabling Act, 28 U.S.C. § 2072, Rule 56 of the Federal Rules of Civil Procedure was amended, as of December 1, 2010. The amendment did not change the standard for granting summary judgment. *See* Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments ("The standard for granting summary judgment remains unchanged.").

Fed. R. Civ. P. 56(e)(2). Thus, once the moving party has made its required showing, the non-moving party must go beyond the pleadings and by her own affidavits, depositions, answers to interrogatories, or admissions demonstrate specific facts to establish there is a genuine issue for trial. Celotex, 477 U.S. at 324. Ultimately, the role of this Court is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. Lujan v. Defenders of Wildlife, 504 U.S. 555, 590 (1992), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### B. Statute of Frauds Defense

Tower Loan contends in the Tower Loan Brief that the undisputed facts show: "(1) that the parties did not, in fact, reach . . . an agreement and (2) even if there had been some agreement, it was not reduced to writing and is unenforceable under the statute of frauds." (Tower Loan Brief at 6). Tower Loan requests that this Court enter a judgment declaring that the statute of frauds bars the Causes of Action, including the Debtor's fraud claim, as a matter of law.

Generally, a contract need not be memorialized in writing to be enforceable in Mississippi. Putt v. City of Corinth, 579 So. 2d 534, 538 (Miss. 1991). The statute of frauds, Miss. Code Ann. § 15-3-1(c), is an exception to that general rule. Putt, 579 So. 2d at 538. The portion of the statute of frauds at issue here states:

> An action shall not be brought whereby to charge a defendant or other party:
> * * *
> (c) upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year . . . unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

Miss. Code Ann. § 15-3-1(c). In short, the statute of frauds demands that contracts for the purchase of land be evidenced "by some memorandum or note" and "be signed by the party to be charged therewith." Miss. Code Ann. § 15-3-1(c); Gulfport Cotton Oil, Fertilizer & Mfg. Co. v. Reneau, 48 So. 292, 293 (Miss. 1909).

Tower Loan argues in the Tower Loan Brief that the statute of frauds requires that the contract itself be in writing, an argument that conflicts with state law and stretches the purpose served by the statute of frauds. The statute of frauds, as its name suggests, prevents fraud by requiring written proof that the parties entered into the transaction, not by requiring proof of a written agreement. Putt, 579 So. 2d at 539.

> The principal purpose . . . is to require the contracting parties to reduce to writing the specific terms of their contract . . . and thus to avoid dependence on the imperfect memory of the contracting parties, after the passage of time, as to what they actually agreed to some time in the past.

Sharpsburg Farms, Inc. v. Williams, 363 So. 2d 1350, 1354 (Miss. 1978).

In an option contract for the sale of land, "some memorandum or note" must include the following essential terms: (1) a description of the property, (2) consideration for the purchase of the property, and (3) the date by which the option must be exercised. Creely v. Hosemann, 910 So. 2d 512, 520 (Miss. 2005), citing Holifield v. Veterans' Farm & Home Bd., 67 So. 2d 456, 476 (Miss. 1953). The writing requirement is not met by receipts evidencing payment of a property's purchase price. Culpepper v. Chain, 32 So. 2d 266 (Miss. 1947). Neither payment of the purchase price nor part performance of the promise is sufficient to take an oral contract for the sale of property out of the statute of frauds. Gulf Refining Co. v. Travis, 30 So. 2d 398, 401 (Miss. 1947).

Considering all of the evidence presented to this Court, the Court finds that Debtor has

succeeded in raising a genuine dispute of material fact as to whether writings exist between herself and Tower Loan evidencing an agreement on mutually-accepted terms to reconvey the Subject Properties to her. In opposition to the Tower Loan Motion, the Debtor relies upon the following writings: (1) checks made payable to Tower Loan (Debtor Ex. B at Exs. 3-6), (2) a receipt of payment dated December 12, 2008, in the amount of $2,700 (Debtor Ex. B at Ex. 2), and (3) the Lease. In Mississippi, checks and receipts are insufficient in and of themselves to comply with the statute of frauds. When combined with the Lease, however, these writings paint a sufficiently definite picture of the parties' transaction[5] for the purposes of the statute of frauds. The Lease provides information missing from the checks and receipt of payment: it includes a legal description of the Subject Properties and sets forth the purchase price and the terms of payment under which the Debtor could chose to repurchase the Subject Properties.

Tower Loan insists that the Lease is immaterial because it lacks the signature of the Debtor. It is Tower Loan, however, and not the Debtor, who is "the party to be charged" within the meaning of the statute of frauds. Reneau, 48 So. 292 at 293. Therefore, the failure of the Debtor to sign the Lease does not render it unenforceable against Tower Loan, the party who signed it. Notwithstanding Tower Loan's forceful arguments to the contrary, Mississippi's version of the statute of frauds, which is consistent with most other jurisdictions, does not require that a writing be signed by *both* the buyer and seller, but only by "the party to be charged." Reneau, 48 So. at 294.

### C. Equitable Estoppel Exception to Statute of Frauds

Tower Loan correctly argues that without an enforceable agreement, there can be no valid cause of action for breach of contract or specific performance for violation of that agreement. Estate

---

[5] This finding is not intended to address the merits of the Causes of Action.

of Collins v. Dunn, 103 So. 2d 425 (Miss. 1958). Tower Loan further argues that without an enforceable agreement, there can be no valid fraud claim. Mississippi courts, however, recognize equitable estoppel as an exception to the statute of frauds. Walker v. U-Haul Co. of Miss., 734 F. 2d 1068, 1077 (S.D. Miss.1984). Simply put, an action for fraud can be maintained to recover damages incurred in reliance on an oral agreement to convey property regardless of whether the statute of frauds would bar specific performance of that agreement. Powell v. Campbell, 912 So. 2d 978, 982 (Miss. 2005). For example, the Mississippi Supreme Court in Abraham v. Harvey, 147 So. 2d 639 (Miss. 1962), held that a claim for fraud was actionable, even though the statute of frauds barred the enforcement of an oral promise to convey commercial property, where the buyer had paid a deposit, had remodeled the building, and had made extensive repairs–all in detrimental reliance on that oral promise. Id. at 644.

To prevail on her claim of equitable estoppel in this Adversary, the Debtor must show (1) that she changed her position in reliance on the conduct of Tower Loan and (2) that she has suffered to her detriment as a result of her change of position in reliance on Tower Loan's conduct. Thompson v. Chick-Fil-A, Inc., 923 So. 2d 1049 (Miss. Ct. App. 2006). Tower Loan asserts in the Tower Loan Brief that "the parties did not, in fact, reach . . . an agreement." (Brief at 6). Therefore, Tower Loan insists that the Debtor's Causes of Action fail because she cannot show that Tower Loan ever agreed to allow her to repurchase the Subject Properties.

This Court finds that the Debtor has established a genuine dispute for trial regarding Tower Loan's alleged promise to her. Although the Debtor's deposition testimony reveals a lack of familiarity with fundamental legal terms regarding the conveyance of property interests and the legal consequences of a foreclosure, her testimony shows that she and Mumford entered into an

arrangement of some kind regarding her continued use of, and her payment for, the Subject Properties.

> Q. ... What you are saying is that following the foreclosure sale, you struck a deal with Tower Loan to buy back your property, right?
>
> A. It wasn't struck no deal and no buy back nothing. He just told me to come up with the money and they will put it back in my name. They didn't say nothing about buying nothing back, whatever, just pay the money - - pay what I owe to come up to current and it would come out of foreclosure.
>
> \* \* \*
>
> Q. [Do you] have anything in writing that evidences that?
>
> A. Evidence on what?
>
> Q. Your arrangement with Tower Loan regarding them stopping the foreclosure.
>
> A. They don't never put nothing in writing.
>
> Q. So, your answer is no?
>
> A. All he ever did was talk on the phone. They don't never put nothing in writing.
>
> Q. The agreement you talked about to buy back the property following the foreclosure, do you have that agreement in writing?
>
> A. I just told you, I don't have no agreement. Tarus [sic] told me on the phone what I needed to do. I didn't have no agreement. They don't never give me no agreement. They just tell me what I need to do to come up to term. I don't never get no agreement with them.

(Tower Loan Ex. 2 at 28 & 35).

In the Debtor Response, the Debtor submits the deposition of David Wayne Love ("Love"), the district supervisor for the branch office of Tower Loan in Leland, Mississippi, where the transaction in dispute took place. Love admitted in his deposition that the Debtor had formed an agreement with Tower Loan regarding her continued occupancy and repurchase of the properties.

> Q. Do you recall any specific agreement or understanding with regard to taking payments on this loan after the foreclosure?
>
> A. Yes.
>
> Q. What was that agreement?
>
> A. She was going to continue to make note and we were going to sell the property back to her with a lease purchase agreement that she agreed to. And, when that agreement was paid out, she would own the property.
>
> Q. That was your understanding?
>
> A. That was the agreement that we made.
>
> Q. Payments accepted by Tower Loan with that understanding?
>
> A. Yes. We were going to take payments and she could buy her property back through a lease purchase agreement. That was the understanding we had with her.
>
> * * *
>
> Q. But, regardless of the fact no lease purchase agreement was signed by Mrs. Ruffins for whatever reason. There was obviously an agreement in place with Tower Loan continuing to take payments and Marsha Ruffins was continuing to occupy the property?
>
> A. Correct. Far as I know she was.
>
> Q. We can all agree on at least that much, correct?
>
> A. Correct.
>
> Q. The signing of the lease purchase agreement would have memorialized that arrangement, would it not?
>
> A. It would have.

(Debtor Ex. B at 21 & 28). Apparently, in reliance on the promises made by Mumford, the Debtor paid Tower Loan part of the repurchase price. In that regard, Mumford's supervisor, Love, identified a check written by the Debtor for over $10,000 as payment on the Subject Properties she was repurchasing in accordance with the Lease. (Debtor Ex. B at 24).

Page 11 of 13

Tower Loan relies on the Plaintiff's Response to Requests for Admissions (the "Debtor Admissions") (Tower Loan Ex. 3), and the Plaintiff's Response to Request for Production of Documents and Things Propounded by Defendant, Tower Loan of Mississippi, Inc. (the "Debtor Responses to Document Requests") (Tower Loan Ex. 4). The Debtor admitted that no formal written agreement was entered into with Tower Loan, but explained that written evidence existed that memorialized their agreement. The Debtor Admissions are not fatal to her Causes of Action. As explained previously, the statute of frauds does not require a formal written agreement. Her inability to identify a formal written agreement in the Debtor's Responses to Document Requests is likewise not fatal to her Causes of Action.

Tower Loan also submitted the affidavit of Mumford, the manager of the branch office in Leland, Mississippi. Mumford testified that "[n]o written contract or other written agreement has ever been entered into between Tower Loan and Ms. Ruffins evidencing a proposed sale or re-titling of the properties to Ms. Ruffins from the date of the foreclosure actions to the present." (Tower Loan Ex. 5). Mumford, however, does not mention in his affidavit Love's prior deposition testimony, much less does he attempt to reconcile Love's conflicting testimony with his own. At best, the affidavit of Mumford creates a factual dispute for trial.

## Conclusion

In conclusion, the Debtor has successfully raised material issues of fact as to the existence of "some memorandum or note" evidencing an agreement between herself and Tower Loan regarding her repurchase of the Subject Properties. The record also establishes a material issue of fact as to whether Tower Loans committed fraud. The Causes of Action are not barred by the statute

of frauds. As a result, the Tower Loan Motion and Staples Joinder should be, and are, hereby, denied.

SO ORDERED.

_____
Neil P. Olack
United States Bankruptcy Judge
Dated: November 1, 2011